HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERHUNE HOMES, INC.,

    Plaintiff,

    v.

NATIONWIDE MUTUAL
INSURANCE COMPANY

    Defendant.

CASE NO. C13-798 RAJ

AMENDED* ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment filed by plaintiff Terhune Homes, Inc. ("Terhune" or "plaintiff") and defendant Nationwide Mutual Insurance Company ("Nationwide" or "defendant"). Dkt. ## 15, 19. Terhune argues that it is entitled to summary judgment because defendant unreasonably and in bad faith breached its duty to defend it as an additional insured under the Artwall Designs and Construction Company Inc. ("Artwall") insurance policy. Dkt. # 19 at 1. Nationwide argues that it is entitled to summary judgment on all claims related to the insurance

\* This order AMENDS and REPLACES Dkt. # 26. Due to a clerical error, the court omitted its analysis regarding attorney's fees under the *Olympic Steamship* doctrine. This Amended Order includes that analysis. Accordingly, defendant's motion for reconsideration is MOOT. Dkt. # 30.

policy to Ruslan Yefimchuk ("Ruslan") because Terhune was not an additional insured under that policy. Dkt. # 15 at 2. Nationwide also argues that it is entitled to summary judgment on all claims related to the Artwall policy because Terhune failed to provide timely notice to Nationwide, which caused it prejudice, and that its claim decision and handling were reasonable under the circumstances. *Id.* at 2. With respect to the Ruslan policy, there is no evidence before the court that Terhune was an additional insured under that policy. Accordingly, Nationwide is entitled to summary judgment as to all claims under the Ruslan Policy.

Having reviewed the motions, exhibits, and the record herein, the court GRANTS in part and DENIES in part Nationwide's motion for summary judgment, and DENIES plaintiff's motion for summary judgment.

## II. BACKGROUND

In 2005, Terhune contracted with Richard and Mary Weglin ("Weglins") for the construction and improvement of the Weglins' real property. Dkt. # 16-5 at 3 (Ex. 5 to Halstead Decl., Findings of Fact & Conclusions of Law ¶¶ 4-5). In April 2005, Terhune began construction. *Id.* (¶ 6). At some point, a dispute arose with respect to the construction, and the Weglins did not pay all amounts owed. *Id.* at 3-4 (¶¶ 7-12). On August 21, 2006, Terhune recorded a Claim of Lien against the property for the amount owed. *Id.* at 4 (¶ 13). In April 2007, Terhune filed an action against the Weglins for breach of contract and to foreclose the claim of lien. *Id.* (¶ 15); Dkt. # 16-3 (Ex. 3 to Halstead Decl.). In June 2007, the Weglins filed a counterclaim for breach of contract. Dkt. # 16-4 (Ex. 4 to Halstead Decl.). In May 2010, the Honorable Timothy Bradshaw entered findings of fact and conclusions of law. Dkt. # 16-5 (Ex. 5 to Halstead Decl.). In November 2010, the trial court entered an corrected judgment. Dkt. # 15-6 (Ex. 6 to Halstead Decl.).

In July 2012, Terhune sent a "tender of defense" as an additional insured under the Artwall policy to the insurance agency that had issued the Artwall policy. Dkt. # 21-3

(Ex. C to Beecher Decl.). Nationwide contends that it did not receive the July 2012 tender until November 2012 when the Office of Insurance Commissioner sent it to Nationwide. *See* Dkt. # 16-8 at 2 (Ex. 8 to Halstead Decl.). In December 2012, Nationwide denied the "tender of defense," which it viewed as a request for reimbursement for past defense costs. *Id.* Terhune filed this action in April 2013 in King County Superior Court, and defendant removed the case to this court. Dkt. # 1.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### B. Evidentiary Analysis

In resolving a motion for summary judgment, the court may only consider admissible evidence. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

However, at the summary judgment stage, a court focuses on the admissibility of the evidence's content, not on the admissibility of the evidence's form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

Terhune moves to strike an offer of settlement made by Terhune "to show that part of Terhune's demand was based on coverage fees" based on Federal Rule of Evidence 408. Dkt. # 22 (Plf.'s Opp'n) at 12; Dkt. # 16-11 at 2-3 (Ex. 11 to Halstead Decl.). Rule 408 prohibits the admissibility of offers of compromise "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction[.]" Fed. R. Evid. 408(a). However, offers of compromise may be admitted "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.* 408(b). Nationwide argues that it provides the offer of settlement, not to prove or disprove the validity or amount of the claim or to impeach, but to demonstrate prejudice to Nationwide. Dkt. # 24 (Def.'s Reply) at 3. The court agrees that the offer of compromise is offered to demonstrate prejudice to Nationwide that Terhune attempted to be reimbursed for coverage fees incurred when it was not notified until after coverage counsel had been engaged to pursue claims against another insurer.

The court also notes that the two declarations submitted by Terhune are not admissible. Dkt. ## 20, 21. Ms. Evans's declaration does not swear that her statements are true and correct, and therefore, does not comply with 28 U.S.C. § 1746. Mr. Beecher's declaration is not signed. Accordingly, the court has not considered these declarations. Nevertheless, since Ms. Evans and Mr. Beecher could properly authenticate the documents attached, the court will consider the exhibits attached to their declarations.

**C. Duty to Defend**

"Both courts and the legislature have recognized that insurance contracts are imbued with public policy concerns." *Nat'l Surety Corp. v. Immunex Corp.* ("*Immunex*"), 176 Wash. 2d 872, 878, 297 P.3d 688 (Wash. 2013). "An insured does not

enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need." *Id.* (quotations and citations omitted). "Because security and peace of mind are principal benefits of insurance, insurers must fulfill their contractual obligations in good faith, 'giving equal consideration in all matters to the insured's interests.'" *Id.* (emphasis omitted).

"The insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify." *Id.* "The duty to indemnify applies to claims that are actually covered, while the duty to defend arises when a complaint against the insured, construed liberally, alleged facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 879 (internal quotations and emphasis omitted). "'[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend.'" *Id.* "Facts that are extrinsic to the pleadings, but readily available to the insurer, may give rise to the duty." *Id.* "Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy." *Id.* The duty to defend does not become a legal obligation until a claim for defense is tendered. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.* ("*USF*"), 164 Wash. 2d 411, 421, 191 P.3d 866 (Wash. 2008). Additionally, Washington State recognizes the "late-tender" rule, which "provides that even where an insured fails to give an insurer timely notice of a claim, the insurer is not relieved of its obligation to perform on the policy unless it can show that the late notice actually and substantially prejudiced it." *Id.* at 425.

Typically, an insurer is notified of a lawsuit and has the opportunity to decide whether to defend before any judicial determination of coverage. That was not the case here. Rather, the underlying counterclaim was filed in June 2007 (Dkt. # 16-4 (Ex. 4 to Halstead Decl.), and the underlying lawsuit was tried to judgment in May 2010, and the corrected judgment was entered in November 2010. Dkt. # 16-5 (Ex. 5 to Halstead

Decl.); Dkt. # 16-6 (Ex. 6 to Halstead Decl.). According to Nationwide, it was not notified of the underlying suit until November 2012, and it replied in December 2012 by denying the tender.[1] *See* Dkt. # 16-8 at 2 (Ex. 8 to Halstead Decl.).

Thus, the court must first determine whether Nationwide had a "duty to defend"[2] under the Artwall policy, and if so, whether Nationwide was prejudiced by the late-tender.

The Artwall policy defines "you" and "your" to "refer to the Named Insured," Artwall. Dkt. # 16-1 at 7 (Ex. 1 to Halstead Decl.). The additional insured endorsement amended the policy to include Tehrune as an individual insured with respect to liability for property damage caused, in whole or in part, by:

> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

*Id.* at 22 (§ A). The parties agree that Artwall was Terhune's painting subcontractor, and performed no other work for Terhune. Thus, the Artwall policy only provided coverage for property damage caused by acts or omissions by Artwall and its employees in performing its painting obligations for Terhune.

---

[1] According to Terhune, it sent the "tender of defense" in July 2012. Dkt. # 21-3 (Ex. C to Beecher Decl.).

[2] Practically speaking, there was nothing to "defend" after judgment was already entered when Nationwide received notice. Thus, Terhune's tender is more appropriately seeking reimbursement for fees and costs incurred, rather than "defense" of a claim. *See Waite v. Aetna Cas. & Sur. Co.*, 77 Wash.2d 850, 858, 467 P.2d 847 (Wash. 1970) ("The fact that in some cases the insurer is not in a position to conduct a proper defense for the insured does not mean that it cannot discharge its duty under the policy provisions. The duty to defend can be enforced by requiring the insurer to reimburse the insured for its costs in defending against the claim, which, if proven, would be within the coverage of the policy."). Washington courts have referred to these situations as a "late-tender" for reimbursement of indemnity and/or defense costs under the insurance policy. *See USF*, 164 Wash. 2d at 422-426 (discussing late-tender rule in context of contribution and subrogation claims between insurers).

1  Additionally, the policy defines "property damage" to mean "[p]hysical injury to
2  tangible property, including all resulting loss of use of that property" or "[l]oss of use of
3  tangible property that is not physically injured."  Dkt. # 16-1 at 20-21 (Ex. 1 to Halstead
4  Decl., § V.17.a).  The vast majority of the Weglins' counterclaims allege facts relating to
5  breach of the construction contract with respect to construction and design flaws and
6  defects.  Dkt. # 16-4 (Ex. 4 to Halstead Decl., ¶¶ 17-20, 22-27, A, B.1-2 & 4, C-D).
7  However, the Weglins also alleged that "[n]umerous cosmetic defects in workmanship,
8  together with damage caused by Plaintiff's crews, remain uncorrected despite
9  Defendants' demands."  Dkt. # 16-4 at 4 (Ex. 4 to Halstead Decl., ¶ 21).  In their prayer
10  for relief, the Weglins asked for a decree of specific performance directing Terhune to,
11  among other things, "[c]orrect and repair all cosmetic deficiencies and damage to the
12  premises and contents caused by Plaintiff and Plaintiff's crews[.]"  *Id.* at 5 (¶ B.3).  These
13  two allegations in the complaint referring to damage caused by plaintiff's crews,
14  construed liberally, could result in coverage by Nationwide where Artwall was one of the
15  "crews" on site as the painting subcontractor.  The interrogatory responses by the
16  Weglins confirm that at least some of the damages alleged could have included damages
17  caused to the hardwood floors by the painter.  Dkt. # 21-3 at 28-29 (Ex. C to Beecher
18  Decl., Interrog. 1 Resp.).

19  Accordingly, the court finds that Nationwide had a duty to defend against these
20  allegations.[3]

21  Nevertheless, Terhune did not notify Nationwide about the lawsuit until nearly
22  five years after the Weglins filed the counterclaim, and two years after the trial court

---

[3] The parties do not dispute that the Artwall policy did not provide coverage for any of the construction-related damages alleged by the Weglins. Thus, the duty to defend was not triggered by the vast majority of the construction-related allegations that clearly fall outside the policy.

entered judgment.[4]  "Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law."  *USF*, 164 Wash. 2d at 427.  "The insurer has the burden of proving actual and substantial prejudice from the breach."  *Id.*  The Washington Supreme Court "has not defined the precise set of circumstances under which an insured's breach of a notice provision constitutes prejudice as a matter of law."  *Id.*  However, the "insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests."  *Id.* at 430.

Nationwide argues that that the "timing of Terhune's notice, the fact that the underlying lawsuit was complete, and the fact [that] Terhune had already hired coverage counsel and incurred coverage expenses make Terhune's untimely notice an extreme case under which prejudice should be presumed as a matter of law."  Dkt. # 15 at 10.  Nationwide also argues that had it been timely notified, (1) it could have retained defense counsel whose expenses would have been separate and apart from those incurred in the prosecution of Terhune's claims against the Weglins as well as $30,000 in coverage fees, (2) it could have had its coverage obligations determined in a declaratory judgment action, (3) it had no opportunity to minimize or control defense costs by settling the Weglins' claims.  *Id.* at 10-12.

The court disagrees that prejudice should be presumed as a matter of law under the circumstances because the Washington Supreme Court was presented with similar factual circumstances as to timing, and concluded that prejudice had not been demonstrated as a matter of law.

In *USF*, homeowners sued the general contractor, Dally, for construction defects to a condominium project in the spring of 2000.  16 Wash. 2d at 416.  Dally tendered the

---

[4] Terhune does not dispute that it failed to notify Nationwide until five years after the counterclaim and two years after the trial court entered judgment.  Accordingly, the court finds that Terhune breached the notice provisions of the policy.

AMENDED ORDER - 8

claim to two insurers, but not USF, which issued a general insurance policy, because it believed that tender was improper under the USF policy. *Id.* In January 2002, Dally and the two insurers entered into a settlement agreement, and Dally assigned its rights to the two insurers. *Id.* The two insurers then instituted contribution litigation against all of Dally's other known insurers, but they were unaware of the USF policy until the litigation was complete. *Id.* at 416-17. In February 2004, the two insurers filed a subrogation[5] and contribution claim against USF demanding partial reimbursement of their indemnity and defense costs. *Id.* at 417. The court found that USF had shown "that it did not have notice of the claim against Dally until 2004, nearly four years after the initial complaint, two years after Dally's settlement with [the two insurers], and some time after [the] contribution litigation with the other insurers was complete." *Id.* at 431. However, USF had "not shown how that delay specifically deprived it of the ability to put forth defenses to coverage or to contest the value of the damages[.]" *Id.*

Here, it is undisputed that Nationwide did not have notice of the underlying claim until five years after the counterclaim, and two years after judgment. However, Nationwide has not presented any evidence with respect to how that delay specifically deprived it of the ability to have its coverage obligations determined in a declaratory judgment or to minimize or control defense costs by settling the Weglins' claim. Indeed, Nationwide could have accepted Terhune's late-tender with a reservation of rights and filed a declaratory action to determine its coverage obligation as to the defense costs that Terhune is seeking. Nor has Nationwide presented any evidence supporting its argument that it could have retained separate defense counsel whose expenses would have been separate and apart from those incurred. The court notes that Nationwide's Claims

---

[5] Subrogation is the "principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Id.* at 423. "An insurer entitled to subrogation 'stands in the shoes' of the insured and is entitled to the same rights and subject to the same defenses as the insured." *Id.*

Manager has speculated that she believes that Nationwide would have denied the tender even if it had been timely submitted. Dkt. # 21-7 (Ex. G to Beecher Decl.).

Nevertheless, Nationwide has presented evidence that indicates that Terhune sought the entire cost of legal fees, regardless of whether they were incurred in defense of the Welgins' counterclaims. Dkt. # 17-3 at 2-92 (Ex. C to Anders Decl.) (billing records indicating $289,509.80 incurred from date Terhune filed the complaint to May 6, 2011, and not segregating defense costs separately); Dkt. # 16-11 (Ex. 11 to Halstead Decl.) (March 2013 letter from Terhune to Nationwide indicating total defense fees and costs over $311,000, in addition to coverage fees of $29,856). Additionally, as previously indicated, the Artwall policy only provided coverage for property damage caused by Artwall employees relating to its painting obligation. The only evidence before the court regarding alleged property damage related to painting is damage to the hardwood floors caused by one of the painters.[6] Dkt. # 21-3 at 28-29 (Ex. C to Beecher Decl.). To the extent that Terhune seeks legal fees and costs that appear to be substantially in excess of the potential fees incurred in defense of the covered claim under the Artwall policy, the court finds that the question of whether Nationwide was prejudiced as a result of the late notice presents a material question of fact.

Thus, summary judgment is not appropriate on the breach of the duty to defend/bad faith claim because, if a trier of fact finds that Nationwide was prejudiced as a result of the untimely notice, Nationwide would be released from its obligations under the policy, and it likely would have acted reasonably in denying the tender. Such a result

---

[6] In theory, had Nationwide been provided with proper notice, and it defended under a reservation of rights, it likely could have avoided being strapped with the collective legal costs. Unfortunately for Nationwide, the Washington Supreme Court has made it clear that the insurer must provide evidence supporting its arguments of prejudice. *USF*, 164 Wash. 2d at 430 ("it has not shown how the delay specifically deprived it of the ability to put forth defenses to coverage or to contest the value of the damages, etc. It may well do so successfully at trial, but on the record before us we cannot say that USF has proved prejudice as a matter of law."). Nationwide has only provided argument and speculation, not evidence, regarding actions it could have taken.

would likely absolve Nationwide of liability as to all of plaintiff's claims. In contrast, if a trier of fact finds that Nationwide has not demonstrated prejudice, then Nationwide would not be released from its obligations under the policy, and it likely would not have acted reasonably.[7] Similarly, resolving the question of prejudice will mostly resolve the question of whether allocation is permitted for defense costs. *See Waite*, 77 Wash. 2d at 856 ("where an insurer wrongfully refuses to defend, it will be required to pay the judgment or settlement to the extent of its policy limits and also to reimburse the insured for his costs reasonably incurred in defense of the action."); *Prudential Prop. & Cas. Ins. Co. v. Lawrence*, 45 Wash. App. 111, 121, 724 P.2d 418 (Wash. App. 1986) ("when an insurer wrongfully refuses to defend and there is no reasonable means of prorating the costs of defense between those items that are covered and those that are not covered, the insurer is liable for the entire cost of the defense."). One question that would likely remain, which the parties have not addressed, would be whether there is a reasonable means of prorating covered and non-covered defense expenses.[8]

**D. *Olympic Steamship* Fees**

Defendant moves the court for an order that Terhune is not entitled to recover attorney's fees under *Olympic Steamship* because it failed to provide timely notice to Nationwide. Dkt. # 15 at 17.

"Generally attorney fees are not recoverable in the absence of a contract term or statute allowing for their recovery." *Public Utility Dist. No. 1 of Klickitat Cnty. ("PUD") v. Int'l Ins. Co.*, 124 Wash. 2d 789, 814, 881 P.2d 1020 (Wash. 1994). However, in the

---

[7] Nationwide's reliance on the Findings of Fact and Conclusions of Law is misplaced. The trial court's judgment is dispositive on the question of the duty to indemnify, not the duty to defend, which must be viewed based on the allegations of the complaint, not the actual liability adjudicated.

[8] As indicated above, the Artwall policy only covers lawsuits alleging claims of property damage caused by Artwall employees related to painting as the subcontractor on Terhune's construction project.

insurance context, an "insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, whether or not the insurance policy contains a provision for such fees." *Id.* at 815 (internal quotations omitted) (citing *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37, 54, 811 P.2d 673 (1991)). Washington courts will not authorize the imposition of attorney's fees "when an insured has undisputedly failed to comply with the express coverage terms, **and** the noncompliance may extinguish the insurer's liability under the policy." *Id.* (emphasis added).

In *PUD*, the Court held that it could not justify an attorney's fees award under *Olympic Steamship* because the insured failed to comply with the express coverage terms and that noncompliance may extinguish the insurer's liability under the policy. 124 Wash. 2d at 815. In so holding, the Court acknowledged that this result was not altered by the fact that it had found that the insured was entitled to insurance proceeds because the insurers were not actually prejudiced by the insured's noncompliance with the coverage provision for settling the claim without the insurer's consent. *Id.* Thus, *PUD* seems to support defendant's proposition that noncompliance with the insurance policy, regardless of prejudice to the insurer, forecloses *Olympic Steamship* fees.

*In Liberty Mutual Insurance Company v. Tripp*, the Washington Supreme Court noted that if Liberty established that it was prejudiced by the insured's failure to comply with the notice of settlement provision, the insured would not be entitled to an award of attorney's fees under *Olympic Steamship*. 144 Wash. 2d 1, 20, 25 P.3d 997 (2001). It then opined that "the result should be the same even if Liberty fails to establish prejudice because it was the [insured's] failure to comply with the express terms of the insurance contract, not Liberty's conduct, that precipitated th[e] action." *Id.* The Court then held that the Court of Appeals erred in awarding fees. *Id.* Accordingly, *Liberty Mutual* also seems to support defendant's proposition that noncompliance with the insurance policy, regardless of prejudice to the insurer, forecloses *Olympic Steamship* fees.

In a more recent decision, the Washington Supreme Court held that the trial court properly awarded *Olympic Steamship* attorney's fees where the insured was "compelled to assume the burden of legal action to obtain the benefit of its insurance contract." *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wash. 2d 255, 273-74, 199 P.3d 376 (2008). However, the circumstances in that case involved an insured that had violated the insurance policy by failing to obtain consent of the insurer before it settled, and where the insurer did not demonstrate prejudice. *Id.* at 268-69. This most recent Washington Supreme Court case seems to indicate that noncompliance with a coverage provision, by itself, does not foreclose *Olympic Steamship* fees where the insurer had not been prejudiced. Thus, it appears that the Washington Supreme Court may be moving away from the practical results of *PUD* and *Liberty Mutual* that may result in a windfall to an insurer who denies a tender where it has a duty to defend, forces the insured to file a law suit to obtain coverage, and then forecloses the insured's ability to recover *Olympic Steamship* attorney's fees where the insured did not comply with notice provisions regardless of prejudice to the insurer.

Although the Court in *Mutual of Enumclaw* cited to *PUD* for the proposition that an insured's noncompliance with a cooperation clause releases the insurer from its responsibilities only if the insurer was actually prejudiced, it did not reference *PUD* or *Liberty Mutual* in its attorney's fees analysis. *Id.* at 269, 273-74. Nevertheless, the court relies on the most recent Washington Supreme Court decision in finding that it cannot rule as a matter of law whether Terhune is entitled to *Olympic Steamship* fees where defendant has not demonstrated prejudice, where Terhune was compelled to file this case to obtain the benefit of its insurance contract, and where defendant has not demonstrated that plaintiff's noncompliance with the notice provision may extinguish its liability under the policy.

### IV. CONCLUSION

For all the foregoing reasons, the court GRANTS defendant's motion with respect to the Ruslan policy, and DENIES it in all other respects. The court also DENIES plaintiff's motion for summary judgment.

Dated this 9th day of May, 2014.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge